NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| U.S. COSMETICS CORP. and MIYOSHI KASEI, INC.<br><br>Plaintiffs,<br><br>v.<br><br>GREENBERG TAURIG, LLP,<br><br>Defendant. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 04-cv-3697 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendant Greenberg Traurig ("GT") for summary judgment pursuant to Federal Rule of Civil Procedure 56. Oral argument was heard on this matter on March 27, 2007. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's motion for summary judgment is **granted**.

**I.    BACKGROUND**

Plaintiffs United States Cosmetics Corp. ("USCC") and Miyoshi Kasei, Inc. (collectively "Plaintiffs") hired GT to represent them in a patent lawsuit brought against Cardre, Inc. ("Cardre"). Plaintiffs brought this legal malpractice action against Defendant, alleging that GT improperly settled the Cardre action. See Plaintiffs' Rule 56.1 Statement of Disputed Facts in Opposition to Summary Judgment ("P.56.1") at 3.

USCC has patents on several products including, a product containing hydrogenated lecithin[1], a polyethelyne chemical[2], and dimethicone or glycerol rosinate[3]. Following the departure of Andrew Sujet ("Sujet") from USCC in about 1990, USCC became suspicious that Sujet's new company, Cardre, was marketing or about to market products that infringed upon USCC's patents. Specifically, during the 1990s Cardre produced and marketed the accused products - LT/PP, PE/PT, and ST-PM/Gly Ros - resulting in sales of some of the products to competitors, including *inter alia* Avon and Revlon. USCC maintains that it was suspicious of Cardre's infringement; however, the tests were inconclusive as to whether infringement had occurred.

USCC claims that it did not become aware of the alleged infringement until 2000 when USCC read a Cardre brochure showing that the Cardre product had waterproofing characteristics like USCC's LT product. Subsequently, GT, at Plaintiffs' request, sent a cease-and-desist letter to Cardre. See Def. Ex. G. Cardre and USCC then engaged in discussions about the accused products. No agreement was reached between the parties and GT advised USCC as to the weaknesses of the potential claims. Thereafter, GT settled the USCC/Cardre action. Plaintiffs argue that GT was not authorized to enter into settlement. After GT settled the USCC/Cardre action, Pillsbury Winthrop replaced GT as USCC's counsel. This Court denied a motion to dismiss the USCC/Cardre action. Thereafter, USCC (represented by Pillsbury Winthrop) settled the action for $375,000.

In the interim, Sujet sold Cardre. Subsequently, Cardre destroyed all remaining samples of the accused products.

---

[1] USCC marketed this product as "LT." Cardre's accused product was marketed under the name "PP." See P.56.1 at 27.

[2] USCC marketed this product as "PT." Cardre's accused product was marketed under the name "PE." See P.56.1 at 29.

[3] USCC marketed this product as "ST-PM." Cardre's accused product was designated as "Gly-Ros" or "IR.OX." See P.56.1 at 30.

**II.    STANDARD OF REVIEW**

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact.  Id.  "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  Id.  The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor.  Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**III.    DISCUSSION**

To prevail on the attorney malpractice claim, Plaintiffs must demonstrate that they "would have prevailed . . . in the 'case within the case' but for the alleged substandard performance."  Lerner v. Laufer, 359 N.J. Super. 201, 221-22 (App. Div.) certif. denied, 177 N.J. 223 (2003) (citing Frazier v. New Jersey Mfrs. Ins. Co., 142 N.J. 590, 601 (1995).  Here, Defendant argues that Plaintiffs cannot establish that they would have prevailed or settled for more in the underlying patent action because Plaintiffs (1) cannot prove infringement; (2) cannot prove marking; and (3) laches bars their recovery.

Additionally, to succeed on the legal malpractice claim, Plaintiffs must "establish the recovery which [they] would have obtained if malpractice had not occurred."  Frazier, 142 N.J. at 601 (quoting Osborne v. O'Reilly, 276 N.J. Super. 329, 331 (Law Div. 1993)).  In other words,

Plaintiffs bear the burden of showing that the damages claimed in the malpractice action were "proximately caused by the attorney's negligence or malpractice." Lieberman v. Employers Ins. of Wasau, 84 N.J. 325, 341 (1980). Specifically, "[t]he measure of damages in such a case, then, is ordinarily the amount the client would have received in the absence of his attorney's negligence, and generally requires proof of the viability and worth of the claim that was irredeemably lost." Albee Assocs. v. Orloff, Lowenbach, Stifelman & Siegel, P.A., 317 N.J. Super. 211, 223 (App. Div.) certif. denied, 151 N.J. 147 (internal citations and quotations omitted). In this case, Defendant contends that Plaintiffs cannot prove recoverable damages because (1) USCC does not have contemporaneous records of its profits and sales for the period for which it seeks damages (1995 through 2000); and (2) USCC's summaries of cost and profit data is inadmissible. As set forth below, it is the finding of this Court that summary judgment is appropriate because Plaintiffs cannot prove either the marking or damages elements of the underlying patent action.

### IV. ANALYSIS

Based on the parties' submissions and arguments set forth during the March 27, 2007 hearing, it is evident that there are several issues of material fact present in this case. However, the absence of material fact as to one of the necessary elements of the legal malpractice claim is sufficient grounds for this Court to grant Defendant's motion for summary judgment.

#### A. Marking

To succeed in this case, Plaintiffs must demonstrate that they properly marked their patented product in accordance with 35 U.S.C. § 287(a). To have prevailed in the underlying patent action, Plaintiffs would have to show that they marked their patented products by printing on them the word

"patent" or "pat." together with the number of the patent on the product itself, "or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice." 35 U.S.C. § 287(a).  Further, "marking of the patented article must comply strictly with [35 U.S.C. § 287(a)] to constitute notice to the world." Metrologic Instruments Inc. v. PSC Inc., No. 99-4876, 2004 WL 2851955 at * 20 (D.N.J. Dec. 13, 2004) (citing T.C. Weygandt Co. v. Van Emden, 40 F.2d 938 (D.C.N.Y. 1930)).  Additionally, Plaintiffs must show that USCC "consistently marked substantially all" of the patented products during the infringing period." Nike, Inc. v. Wal-Mart Stores, Inc., 138 F.3d 1437, 1446 (Fed. Cir. 1998).

The marking requirement is designed to give notice to the public of the patent.  See Dunlap v. Schofield, 152 U.S. 244, 247-48 (1894) (holding that patentee may not recover damages unless he has given notice of his right).  "The statute is intended 'to give patentees the prior incentive to mark their products and thus place the world on notice of the existence of the patent.' " Calmar, Inc. v. Emson Research, Inc., 850 F. Supp. 861, 867 (C.D. Cal. 1994) (quoting Am. Med. Sys., Inc. v. Med. Eng'g Corp., 6 F.3d 1523 (Fed. Cir. 1993)).  Thus, the burden of proving notice or marking rests with the patent owner.  See id.; Cybiotronics Ltd. v. Golden Source Elecs., 130 F. Supp. 2d 1152 1160-61 (C.D. Cal. 2001).

Whether a plaintiff has complied with the marking statute is a question of fact.  Gart v. Logitech, Inc., 254 F.3d 1334, 1339 (Fed. Cir. 2001).  "[T]he issue of marking is properly decided upon summary judgment when no reasonable jury could find that the patentee has or has not provided actual notice to the 'particular defendants by informing them of his patent and of their

5

infringement of it.' " Imagexpo, L.L.C. v. Microsoft Corp., 299 F. Supp. 2d 550, 554 (E.D. Va. 2003) (quoting Dunlap, 152 U.S. at 247-48). Accordingly, if this Court finds that the Plaintiffs did not sufficiently mark their patented products, Plaintiffs will have failed to show that they could have prevailed in the underlying patent action and Defendant's motion for summary judgment should be granted.

In this case, USCC's patented products and powders cannot be marked directly; thus, the products' packaging must be marked in order to comply with 35 U.S.C. § 287(a). See Zavadoski Dec. ¶6. In the case where a product cannot be marked directly, courts have taken a pragmatic approach to the marking requirement, considering whether the patentee has chosen to list the patent in a location that will reasonably put the public on notice. See Rutherford v. Trim-Tex, Inc., 803 F. Supp. 158, 162 (N.D. Ill. 1992) (citing Sessions v. Romadka, 145 U.S. 29, 49-50 (1892)). In fact, "a variety of product character considerations such as 'defacement, custom of the trade, expense and other reasonable factors' are taken into account in determining whether alternative marking is permissible.' " Metrologic Instruments Inc., No. 99-4876, 2004 WL 2851955 at *20 (quoting Rutherford, 803 F. Supp. at 161 (citing Wayne-Gossard Corp. v. Sondra Mfg., Inc., 579 F.2d 41, 43 (3d Cir. 1978))).

Here, Plaintiffs claim that USCC satisfied the marking requirements because it included the patent number on documents that were physically attached to the packages containing USCC's patented products. See Zavadoski Dec. ¶6; Pockoski Dec. ¶¶6, 8; see e.g., Ex 30 (examples of marked packing slips). At oral argument, counsel for Plaintiffs described how the patented products were marked: the products were placed in plastic bags, the bags were then placed inside drums, and

several drums were shrinkwrapped together. On the shrinkwrap, Plaintiffs claim that they placed a bill of lading or shipping invoice which listed the patents of the products contained within the shrinkwrapped shipment. See also Declaration of Louise Pockoski ("Pockoski Decl.") ¶¶2, 8. However, as Defendant notes, Plaintiffs have only submitted evidence of packing slips and invoices listing the patent - no documents have been submitted to show that any bills of lading listed the patent. See Pls. Ex. 30 (showing only invoices and packing slips). This distinction is important because a bill of lading is a more formal document and there is a greater likelihood that a consumer will keep a bill of lading. Further, as explained at oral argument, the packing slips and invoices were physically attached to the shrinkwrap - a packing material that would be discarded by the consumer. Furthermore, Defendant notes that the invoices and packing slips listing Plaintiffs' patents were attached to shipments containing more than one product, therefore, it was unclear what products were associated with each patent.

In response, Defendant argues that Plaintiffs' listing of the patent number on bills of lading and packing slips does not satisfy the marking requirement. In support of this argument, Defendant relies on Metrologic Instruments Inc. v. PSC Inc., wherein the patent holder did not mark the product itself, but instead included a statement on the packaging - "See Reference Manual for Patent Coverage" - and the 45-50 relevant patents were listed in the reference manual. No. 99-4876, 2004 WL 2851955 at **18-19 and 21. The Metrologic court recognized that "the purpose of [35 U.S.C. § 287] is to provide notice to the public of patent coverage" and "[w]hen, as here, the public finds no marking or writing on the product itself, the statute contemplates that the packaging is the next most logical place for effective notice of the patent." Id. at *21. Based on this reasoning, the court

found that packaging informing the public to reference the user's guide did not satisfy the marking requirement. The Metrologic court granted summary judgment against the patent holders in light of their "additional failure in providing patent numbers on the packages containing the product, as the language of the marking statute explicitly requires." Id. Here, Plaintiffs are guilty of a similar "additional failure." Rather than place the patent on the bags containing the products, or the drums containing the bags, Plaintiffs chose to mark their product by placing bills of lading and invoices that were shipped with several containers of Plaintiffs' products. Plaintiffs put forth a colorable argument that a purchaser is likely to keep an invoice and therefore, an invoice is a reasonable place to list a patent. Nevertheless, Plaintiffs fail to meet their burden of showing that they strictly complied with the requirements of 35 U.S.C. § 287. Specifically, Plaintiffs failed to mark the *containers* in which the products were stored - namely, the bags or drums.

Moreover, Plaintiffs must show that USCC "consistently marked substantially all" of the patented products during the infringing period." Nike, Inc., 138 F.3d at 1446. Here, Plaintiffs have produced only a sampling of shipping invoices during the period of alleged infringement. As such, Plaintiffs fail to meet this additional aspect of the marking requirement.

No reasonable jury could find that Plaintiffs satisfied the marking requirement in the patent infringement action. Accordingly, Plaintiffs cannot prevail in the instant legal malpractice action and summary judgment is appropriate.

### B.  Damages

Additionally, in order to prevail in the instant legal malpractice action, Plaintiffs must prove damages resulting from Defendant's alleged malpractice. See BIC Leisure Prods. v. Windsurfing

Int'l Inc., 1 F.3d 1217-18 (Fed. Cir. 1993); King Instrument Corp. v. Otari Corp., 767 F.2d 853, 863 (Fed Cir. 1985). Specifically, the Federal Circuit has adopted the following standard for proving lost profits in a patent case:

> [t]o obtain as damages the profits on sales [the patent holder] would have made absent the infringement, i.e. the sales made by the infringer, a patent owner must prove (1) demand for the patent product, (2) absence of acceptable non-infringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of profit he would have made.

Panduit Corp. v. Stahlin Bros. Fibre Works, 575 F.2d 1152, 1156 (6th Cir. 1978); see also Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545 (Fed. Cir. 1995).

Here, Plaintiffs seek to recover the impaired value of the patent case. To prove the impaired value of the patent case, Plaintiffs primarily rely on the testimony and report of their damages expert, Lloyd Oliver. Basing his opinion on USCC's internal data and Cardre's sales figures. Plaintiffs claim that the data on which Oliver based his opinion would be considered "reasonable, sufficient and reliable" by damages experts evaluating lost damages. Pls. Opp'n Br. at 24. Plaintiffs claim that Oliver's analysis did not rely on "summaries" of documents prepared pursuant to Federal Rule of Evidence 1006. Instead, Oliver considered USCC's sales records and price information in light of USCC's historical production levels. Oliver Dec. ¶¶6-9. Oliver determined the quantity of lost sales according to Cardre documents. Oliver Dec. ¶11.

Undermining Plaintiffs' contention that Oliver's report and summary are admissible is the fact that Plaintiffs have failed to produce any contemporaneous business records from the time period for which they seek damages. These business records have not been produced because they no longer exist. As Defendant notes, summary evidence is admissible under Federal Rule of Evidence 1006 "only if the underlying materials upon which the summary is based are admissible."

9

U.S. v. Pelullo, 964 F.2d 193, 204 (3d Cir. 1992). Furthermore, such summary evidence is inadmissible where the underlying documents are not made available to the opponent. See U.S. v. Sarraga-Solana, No. 04-144-6, 2005 WL 3701472 at *5 (D. Del. Oct. 6, 2005) ; AEL Indus. v. Loral Fairchild Corp., 882 F. Supp. 1477, 1487 (E.D. Pa. 1995). In light of the fact that none of Plaintiffs' damages estimations are based on available contemporaneous records available for Defendant's review, such evidence is inadmissible. It is this Court's conclusion that Plaintiffs have not satisfied their burden of showing damages caused by the alleged malpractice. Accordingly, Defendant's summary judgment should be granted.

**V.    CONCLUSION**

For the reasons stated, it is the finding of this Court that Defendant's motion for summary judgment is **granted**. An appropriate Order accompanies this Opinion.

        S/ Dennis M. Cavanaugh
        Dennis M. Cavanaugh, U.S.D.J.

Date:        March     28   , 2007
Orig.:        Clerk
cc:        Counsel of Record
        The Honorable Mark Falk, U.S.M.J.
        File